THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE LAW v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE COUNTY OF NEW YORK and ANDREW H. GREEN, Comptroller, etc., Respondents.

*Illegal assessment — how corrected — review of, upon certiorari.*

Where the commissioners of taxes and assessments of the county of New York return to a writ of certiorari, issued to review an illegal assessment, that the assessment rolls and papers relating thereto have passed out of their hands, and been filed in the office of the comptroller of the city, and are then under his charge, the writ should be quashed as to them.

Nor can a judgment be pronounced in such a case, requiring the comptroller to correct the records in his office.

The proper remedy in such a case is to bring an action against the city to have the assessment vacated, the tax declared illegal, and to restrain the enforcement thereof.

CERTIORARI to review the assessment of certain taxes, imposed on the lots of the relator.

*Michael Canfield*, for the relator.

*J. A. Beall*, for the respondents.

DAVIS, P. J.:

The relator shows a clearly meritorious case for relief. His premises, known for the purposes of taxation as " ward 6, ward No. 392, Mott street," have been duly assessed from year to year from 1870 to 1875, both inclusive, and the taxes imposed thereon have been paid by him in each year. The same premises, under the description of " ward 6, ward No. 392, North street," have been assessed in each of said years, and taxes have been imposed thereon which have not been paid. The lot runs, on one of its sides, from Mott street through to North street. Its entire depth, according to the diagram returned by the commissioners, is ninety-seven feet eight inches on the line which runs through to North street, and ninety-seven feet nine inches on the line which does not run

through; and it has an irregular or diagonal fronting on North street for the greater part of its width, produced by the fact that North street does not run parallel with the line of the lot. Enough appears on the papers returned to show that this is a clear case of double assessment and taxation. The affidavit of the relator, on which the writ was granted, shows that the fact of such double taxation was not known to him until about December 1, 1875; that he immediately thereafter made application to the commissioners of taxes and assessments to remit, and cause to be canceled, the erroneous and duplicate taxes. · The commissioners did thereupon remit and cause to be canceled the double tax for the year 1875, but refused to take any action in respect to the other taxes, on the ground that they had no power to remit or cancel the same. The commissioners of taxes and assessments return to the writ that there are no records or rolls in the office of the commissioners of taxes and assessments, showing the making, levying, payment or the return for the non-payment, of any tax on the lots of the relator designated and described in said writ, for the years 1870 to 1875, both inclusive. They further return, that upon the records of assessment valuations for the years 1870 to 1875, both inclusive, there are entries being the valuations of ward 6, ward No. 392, Mott street, and also entries being the valuations of ward 6, ward No. 392 North street. They also return a diagram of the lot taken from the assessment map of that ward, and this comprises the whole of the return made by them. This return only shows that the lot assessed as ward 6, ward No. 392, Mott street, is the same as that assessed as ward 6, ward No. 392 North street;" and that the records of the commissioners contained evidence, that the alleged assessed valuations of the lot were made, as alleged by the relator.

The comptroller returns that the rolls and records of the department of finance show that the lot designated and described as "ward 6, ward No. 392, Mott street," was assessed for taxes for each and every of the years named, as the same are entered in the book of the receiver of taxes, which entries show that the same were assessed to the relator in each year, and the tax thereon imposed was duly paid, and that for the same years the lot designated as "ward 6, No. 392 Worth street," was assessed in three of the years to the

relator, and the other three to some other person or without the name of any owner or occupant, and that the taxes have not been paid, and that upon the book of arrears of taxes in the bureau of arrears, such taxes are entered in a form showing that the same are unpaid and in arrear. He returned also that the lot was sold for arrears of taxes for the year 1870, imposed on "ward 6, ward No. 392, Worth street," to W. B. Honenstein, for the sum of $386, and certified that these are all the rolls and records with the finance department so far as the same relate to the making, levying, payment or acceptance of the tax upon the lots and premises mentioned and described. These returns, we think, show with sufficient distinctness, the double assessment and taxation imposed upon the lot of the relator, of which he complains. It is apparent how the mistake occurred, when we look at these returns in connection with the affidavit of the relator which show in substance, that the lot has for twenty years been assessed as fronting on Mott street, and that shortly before 1870, Worth street was laid out diagonally across part of the rear of the lot so as to give an irregular frontage on that street; and that since that time the assessors have made duplicate valuations of the lot as one fronting on each of said streets. There has been no intentional wrong, but a mistake, which operates as a legal wrong.

The commissioners of taxes and assessments had clearly no power to make duplicate assessments, without subdividing the lot and imposing separate assessments on each portion thereof; and their error and all the consequences which have followed from it, ought certainly to be corrected by some form of proceeding either by the city authorities or by the courts. The grave question in the case is, whether this can be done in the present proceeding, by certiorari.

The commissioners of taxes and assessments corrected the assessment for the year 1875, for that assessment still remained within their jurisdiction. They held that the several assessments for the years preceding 1875 had passed beyond their jurisdiction, and that they had lost all power to make the desired correction. In this conclusion, we think the commissioners were correct. It was held in *People* v. *Commissioners* (43 Barb. 494), that this court could not relieve an aggrieved party, upon certiorari directed to the

612    PEOPLE ex rel. LAW v. COMRS. OF TAXES.

First Department, January Term, 1877.

commissioners, where his property had been improperly and unjustly assessed, if the assesment rolls had been delivered to the supervisors. This was put upon the ground that the commissioners had no longer any control over the assessment and could not correct or remit it. And in the *People* v. *Reddy* (43 Barb. 540), where it appeared that the assessment roll had been delivered by the assessors to the supervisors of the town duly certified, and was no longer in the possession or control of the assessors, the court held that it could render no judgment or certiorari that could affect the assessment roll or correct any error, although satisfied that there was clear error in the proceedings. And in *The People ex rel. Marsh* v. *Delaney et. al., Assessors* (49 N. Y., 655), it was held that if the roll has been delivered to the board of supervisors, the power of the assessors over it has ceased, and the certiorari should not be allowed, and if allowed, should be quashed, even if return be made. These cases seem to establish that the commissioners in this case cannot be required on this writ to correct the assessment rolls, which have been returned in the several years from 1870 to and including 1874, because they have no control or jurisdiction over the same. All that remains with them is the evidence on their books that the assessments were duplicated on the relator's lot, and a direction to them to correct that record would be of no value to the relator, but, on the contrary, would be injurious to him by destroying a part of the evidence of the fact of double assessment alleged by him. Nor do we see any ground upon which judgment can be pronounced against the comptroller directing him to correct the records existing in his office. He has no jurisdiction or power over them for that purpose, but is a mere agent of the city and county for the purpose of receiving and preserving the records, and taking steps, through the proper officials, for the collection of the taxes. If there were no other reason why judgment of the character sought for could not be pronounced against the comptroller, the absence of the city as a party to the proceeding would be a sufficient one, because it is the corporation that is alone interested in the enforcement of the taxes that have been imposed improperly upon the plaintiff's lot, and the corporation ought to be made a party to, and be heard in, any proceeding taken for that purpose. The corporation counsel, on the ser-

vice of the original motion papers for a writ of certiorari, appeared on behalf of the city, but no process has been issued against the city, nor is it made a party to the writ, and no return has been required of it. It is not perceived, however, that it would be of any service in this particular proceeding if the city were made a party, because it is not the province of the writ to restrain by injunction the collection or enforcement of illegal taxes, but to correct errors that have been committed by officers or boards clothed with authority to impose them. The error is so palpable in this case that we regret that we are unable on this proceeding to grant the relief sought for, but we think the relator's remedy must be had in another form, by action to vacate the assessment, and declare the tax illegal, and restrain the enforcement thereof. The necessity of this can, however, and ought to be prevented by the action of the city authorities. The common council, sitting in their duplicate capacity of supervisors and board of aldermen, ought to direct the cancellation of the tax, and the refunding of the moneys paid by the purchaser at the sale, and thus save the necessity of any further litigation and expense.

The writ in this case must be quashed, but without costs.

BRADY and DANIELS, JJ., concurred.

Writ quashed, without costs.